AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the
District of New Mexico

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAY 1 2 2025

MITCHELL R. ELFERS
CLERK OF COURT

| In the Matter of the Search of | |
|---|---|
| (Briefly describe the property to be searched or identify the person by name and address) | ) ) ) ) ) ) |
| iPhone 16 Pro Max Cellular Phone bearing IMEI: 355067545883472 and SN: KL031H2Y2M | |

Case No. 25-876 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (identify the person or describe the property to be searched and give its location):

See Attachment A, hereby incorporated by reference.

located in the _____State and_____ District of _____New Mexico_____, there is now concealed (identify the person or describe the property to be seized):

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1512(c)(1) | Tampering with Evidence, Attempt to Tamper with Evidence. |
| 18 U.S.C. § 922 (g)(5) | Alien in Possession of a firearm and/ammunition. |

The application is based on these facts:

See Attachment C.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
STEPHANI M LEGARRETA   Digitally signed by STEPHANI M LEGARRETA
                        Date: 2025.05.07 17:26:42 -06'00'
Applicant's signature

Stephani Legarreta, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ _____ (specify reliable electronic means).

Date: ___May 12, 2025___

City and state: ___Las Cruces, New Mexico___

_____
Judge's signature

Hon. Gregory B. Wormuth, United States Magistrate Judge
Printed name and title

## ATTACHMENT A

The property to be searched is an iPhone 16 Pro Max Cellular Phone bearing IMEI: 355067545883472 and SN: KL031H2Y2M, which was seized from Jose Luis Cano (hereinafter the "Device"). The Device is currently at the Homeland Security Investigations Evidence Vault, located at 200 East Griggs in Las Cruces, New Mexico.

iPhone 16 Pro Max Cellular Phone bearing IMEI: 355067545883472 and SN: KL031H2Y2M:

 

1

## ATTACHMENT B

1.    All records on the Device described in Attachment A that relate to Tampering with Evidence, Attempt to Tamper with Evidence, in violation of 18 U.S.C. § 1512(c)(1) and 18 U.S.C. § 922 (g)(5); Alien in Possession of a Firearm and/or Ammunition including:

a.    Any and all software and applications capable of recording and sending pictures, to include storage applications, and any applications that have messaging capabilities that are on the Device.

b.    Any and all notes, documents, records, or correspondence, in any format and medium (including e-mail messages, text messages, instant messages, chat logs and other digital data files).

c.    In any format and medium, all photographs and images taken with the Device.

d.    Any and all electronic address books, names, and lists of names and addresses of individuals on the Device who the Defendant may have communicated with about tampering with evidence, aiding and abetting and/or providing firearms to an illegal alien.

e.    Any and all documents, records, or correspondence, pertaining to the ownership and use of the Device described above, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, text messages, photographs, and correspondence.

2

f. Passwords, encryption keys, and other access devices that may be necessary to access information stored on the Device or elsewhere. Any and all passwords and other data security devices designed to restrict access to, hide, or destroy software, documentation, or data. Data security devices may consist of software or other programming code. Any and all data which would reveal the presence of malware, viruses or malicious codes located on the computer storage media.

g. Records evidencing the use of the Internet Protocol addresses including records of Internet Protocol addresses used by the Device and Internet Protocol addresses used by computers that the device connected to.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| IN THE MATTER OF THE SEIZURE AND SEARCH OF AN ELECTRONIC DEVICE BELONGING TO JOSE LUIS CANO, BEARING SN: KL031H2Y2M AND IMEI NUMBER: 355067545883472 CURRENTLY IN THE POSSESSION OF HOMELAND SECURITY INVESTIGATIONS LOCATED AT 200 E. GRIGGS, LAS CRUCES, NEW MEXICO | Case No. _____ |
|---|---|

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Stephani Legarreta, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the seizure and examination of property, an electronic device, described in Attachment A and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been employed by HSI as such since January 2008. During my tenure with HSI (formerly Immigration and Customs Enforcement), I have been classified, trained, and employed as a federal law enforcement officer with statutory arrest

1

authority and charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. I am currently assigned as a criminal investigator for the Assistant Special Agent in Charge, Las Cruces, New Mexico. Prior to my current position, I was a student for six (6) years at New Mexico State University where I received my Bachelor's and Master's Degrees in Criminal Justice. During the course of this investigation, I have consulted with other HSI SAs and other law enforcement detectives and officers who have extensive experience investigating a wide range of criminal offenses. I have conducted numerous state and federal investigations and received training, education, and have experience with the identification and investigation of federal crimes. I have been personally involved with the execution of search warrants to search electronic devices and seize materials relating to alien smuggling, alien in possession of firearms, financial crimes and the exploitation of children. I have obtained search and arrest warrants for a wide range of investigations.

## FACTS AND CIRCUMSTANCES

3.    The statements in this affidavit are based on information I have gained through investigation as well as my own experience, training, and background as an HSI SA, and information provided by other law enforcement agents who I believe to be reliable. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. As will be shown below, there is probable cause to believe that Jose Luis Cano tampered with evidence and attempted to tamper with evidence in violation of 18 U.S.C. § 1512(c)(1). Additionally, there is probable cause to believe that evidence, fruits, and instrumentalities of 18 U.S.C. § 922 (g)(5); alien in possession of a firearm and/or ammunition are currently stored on the electronic device belonging to, Jose Luis Cano. I respectfully request that the Court issue a warrant authorizing

2

the seizure and search of the Device, more particularly described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.    The property to be searched is an iPhone 16 Pro Max cellular phone (hereinafter "Device") bearing serial number, KL031H2Y2M and IMEI number, 355067545883472.  The Device is currently being stored at the Homeland Security Investigations, Evidence room located at 200 E. Griggs in Las Cruces, New Mexico.

5.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTES

6.    This investigation concerns alleged violations of certain activities relating to the alleged offenses, 18 U.S.C. § 1512(c)(1)—tampering with evidence and attempt to tamper with evidence and 18 U.S.C. § 922(g)(5)—alien in possession of firearms and/or ammunition.

## DETAILS OF THE INVESTIGATION

7.    In January 2025, Homeland Security Investigations (HSI), Las Cruces initiated an investigation into Cristhian Ortega-Lopez (hereafter identified as Ortega). A tip alleged that Ortega, an illegal alien from Venezuela and a suspected member of Tren de Aragua, a criminal gang, was residing with other illegal aliens in the United States unlawfully at an address located in Las Cruces, New Mexico (hereafter identified as Premises) and was in possession of firearms. Nancy and Jose Cano are the owners of the Premises.

8.    On February 28, 2025, two residential federal search warrants were executed, with one being at the Premises, in connection with Ortega. Ortega was arrested, is currently charged with 18 U.S.C. § 922(g)(5) – Illegal Alien in Possession of Firearms or Ammunition and, was booked into the Doña Ana County Detention Center (DACDC) pending criminal

proceedings. Four firearms previously seen in Ortega's possession in photos on social media were seized from the another residence that was searched simultaneously, and three of Ortega's cell phones were also seized from the Premises owned by the Canos.

9.      Additionally, on February 28, 2025, the day the search warrants described above were executed and Ortega was taken into custody, agents permitted Ortega to make a phone call before being transported to DACDC. Agents provided Ortega access to the mobile devices that had been seized. Ortega stated that the phone containing the number he wished to call was not among the mobile devices available to him. Based on this interaction, law enforcement formed the belief that one of Ortega's mobile devices may not have been recovered during the execution of the search warrant.

10.     The residential search warrants also authorized the forensic analysis of the cell phones seized at the residences. In addition, law enforcement asked Ortega for consent to search the cell phones belonging to him. Ortega agreed and signed the consent form. During the analysis of the phones belonging to and utilized by Ortega, messages were obtained from at least one of his Facebook accounts. The messages reflect Ortega's Tren de Aragua affiliation and photos of Ortega and another illegal alien in possession of firearms and ammunition. The deletion of these accounts would ultimately hinder the investigation and destroy evidence pertaining to Ortega's criminal case.

11.     On April 24, 2025, HSI agents executed a search warrant at the residence of Jose and Nancy Cano looking for what was believed to be Ortega's cellphone that was not recovered on February 28, 2025, and for Nancy Cano's cellphone. After being advised of his **Miranda** rights, Jose Cano agreed to speak to agents.

4

12.      During the interview, Jose Cano admitted, among other things, that he destroyed the cellphone that was utilized by Ortega by smashing it with a hammer and discarding the remaining pieces in the city trash dumpster prior to April 24, 2025.

13.      Specifically, Jose Cano stated that he destroyed the cellphone and further admitted that he believed the cellphone contained photos or videos that would reflect negatively on Ortega.  Through further questioning, agents ascertained that Jose Cano destroyed the cellphone believing that it contained photographs of Ortega holding firearms that Ortega had uploaded onto social media platforms, which would be additional incriminating evidence against him.

14.      Agents asked Jose Cano if he would consent to the search of his cell phone (hereafter, the Device) that was retrieved during the execution of the search warrant at his residence. Jose Cano voluntarily provided HSI consent to search the Device and signed a consent form in which he also provided the Device's password to access its contents.

15.      During the review of Jose Cano's cell phone, photos were found of Ortega along with other Cano family members at what appears to be a shooting range.  In fact, the photos appear to be very similar to the photos retrieved from Ortega's social media account, displaying Ortega in possession of firearms. The timestamp on Cano's phone gallery for the photos at the shooting range is dated December 29, 2024.

16.      Additionally, a photo in the gallery on Cano's phone revealed what appears to be a classroom setting.  The photo appeared to depict a PowerPoint slide that had the statute "18 U.S.C. 922 (g)" and listed the sub-section violations, 1 through 9, with § 922(g)(5) referring to the offense of Alien in Possession of a Firearm.  The photo is timestamped, August 17, 2023, with the location in Albuquerque.  This leads your affiant to conclude that Jose Cano likely

5

received training regarding this statute which specifically details how illegal aliens cannot possess firearms.

 Photo located in the Device Timestamped August 17, 2023:

17.    During the first search warrant on February 28, 2025, when Ortega was arrested, Cano gave a voluntary statement to agents. Cano claimed he was not aware whether Ortega and the other aliens were prohibited from possessing firearms.

18.    A photo located during the review of the Device showed that it contained an image, that was timestamped, March 22, 2025, of a handwritten note reflecting a Google email address, "castilloefren301@gmail.com." Efren Castillo was one of the illegal aliens staying at Cano's residence with Ortega and was also at the shooting range shooting firearms with the Canos.

19.    Another photo in the Device, timestamped April 12, 2025, appears to be another screenshot which reflects an unsent email, from "lemonade0152@gmail.com" and the email address "Ortegacwristhian2002@gmail.com" is in the subject line. No email address is in the "To" box, but there is the word "Prueba" in the body of the email. The email address "lemonade0152@gmail.com" is directly connected to the Device on the Google Application located on the Device.

6

20.     Two additional photos were found in the gallery in the Device that appear to be screenshots of Google searches of how to delete a Gmail account. One screenshot is timestamped on March 28, 2025, and the other one was timestamped on March 30, 2025.

21.     At the time of Cano's arrest on April 24, 2025, Cano stated during his Post-Miranda interview that he destroyed the cell phone utilized by Ortega approximately "5 weeks prior." The timeframe Cano places himself intentionally destroying evidence would have been around March 20, 2025. This timeframe sets the Google searches on the Device around the same time period.

22.     In light of Cano's action to destroy physical evidence and his attempt to destroy digital evidence, and his knowledge that possession of firearms by illegal aliens is a federal offense and by the Device containing screenshots to delete Gmail accounts, it is your affiant's belief, on multiple occasions, Cano has attempted or has been successful in the destruction of evidence.

23.     As is the case with most digital technology, information relating to an electronic device's use can be saved or stored on the device intentionally, e.g., by saving an e-mail as a file on the device or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally (for example, traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others). In addition to electronic communications, an electronic device's user's internet activities, including the use of apps, generally leave traces or "footprints" in the web cache and history files of the browser it used. A forensic examiner often can recover evidence suggesting who was using the device, when they used the device, and where the device was when it was being used. Such information is often maintained for months

until such information is deleted by automatic processes operating in the device. Such information can remain in the memory for periods of time after the deletion of the data and potentially recovered.

24.    Based on my training, experience, and research, I know that the Device, which is a smartphone, has capabilities that allow it to serve as a wireless telephone, digital camera, and GPS navigation device. Additionally, it has both web browsing and Wi-Fi capabilities. In my training and experience, examining data, including location data, stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device as well as when the individual used the device and where they were when they used the device.

## TECHNICAL TERMS

25.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant (PDA). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training and experience, the technical terms identified in this paragraph convey the following meanings:

a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless

8

telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.      I know that when an individual uses an electronic device to tamper with evidence or aid and abet, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal

10

offense. The electronic device is also likely to be a storage medium for evidence of crime. From

my training and experience, I believe that an electronic device used to commit a crime of this

type may contain: data that is evidence of how the electronic device was used; data that was sent

or received; and other records that indicate the nature of the offense.

28.    **Nature of examination**. Based on the foregoing, and consistent with Rule 41

(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the

device to human inspection in order to determine whether it is evidence described by the warrant.

29.    **Manner of** execution. Because this warrant seeks only permission to examine a

device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

<u>**RETENTION OF IMAGE**</u>

30.    The government will retain a forensic image of each electronic storage device

subjected to **analysis** for a number of reasons, including proving the authenticity of evidence to

be used at trial; responding to questions regarding the corruption of data; establishing the chain

of custody of data; refuting claims of fabricating, tampering, or destroying data; and addressing

potential exculpatory evidence claims where, for example, a defendant claims that the

government avoided its obligations by destroying data or returning it to a third party.

## CONCLUSION

31.    I submit that this affidavit supports probable cause for a search warrant in an abundance of caution in lieu of consent, authorizing the examination of the Device and extraction described in Attachment A to seek the items described in Attachment B.

32.    Assistant United States Attorney Randy Castellano reviewed and approved this search warrant application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

STEPHANI M LEGARRETA    Digitally signed by STEPHANI M LEGARRETA
Date: 2025.05.07 17:27:56 -06'00'

Stephani Legarreta
Special Agent
Homeland Security Investigations

Subscribed electronically and sworn telephonically
to me on this 12th day of _____May_____, 2025:

HONORABLE GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE